UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

ERIC JONES,

                    Petitioner,

        - against -

MARK BRANDT, Superintendent of Elmira
Correctional Facility,

                    Respondent.
-------------------------------------------------------X

**OPINION AND ORDER**

**09 Civ. 1035 (SAS)**

9/24/13

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

# I.    INTRODUCTION

        Petitioner Eric Jones brings this pro se habeas corpus petition

pursuant to section 2254 of Title 28 of the United States Code challenging his state

court conviction following a jury trial in New York State Supreme Court, New

York County.[1]  Petitioner was convicted of Rape in the First Degree,[2] Criminal

Sexual Act in the First Degree,[3] and Attempted Rape in the First Degree.[4]

Petitioner was sentenced, as a second felony offender, to concurrent determinate

---

[1]     *See* Petition for a Writ of Habeas Corpus ("Pet.") at 2.

[2]     *See* New York Penal Law ("NYPL") § 130.35[1].

[3]     *See id.* § 130.50[1].

[4]     *See id.* §§ 110.00, 130.50[1].

terms of twenty-two years on the rape and criminal sexual assault counts, and fifteen years on the attempted rape count, followed by five years of post-release supervision.

On December 23, 2008,[5] Petitioner filed the instant Petition, challenging his conviction on the following grounds: (1) the trial court burdened his right to self-representation; (2) he was denied his right to counsel; (3) the trial court abused its discretion by not excusing the jury before court officers escorted him from the courtroom; (4) excessive sentence; (5) ineffective assistance of trial counsel; (6) ineffective assistance of appellate counsel; (7) the evidence was legally insufficient to establish guilt, and the verdict was against the weight of the evidence; (8) the police search of Petitioner's apartment violated the Fourth Amendment; (9) the prosecutor committed misconduct; and (10) the judge committed misconduct.  For the following reasons, the Petition is denied.

## II.   BACKGROUND

---

[5]      Petitioner's conviction became final on December 24, 2007, the last date for Petitioner to seek a writ of certiorari to the Supreme Court. *See* Sup. Ct. R. 13; *Williams v. Artuz*, 237 F.3d 147, 151 (2d Cir. 2001) (holding that section 2254's limitations periods does not begin to run until direct review in the state court system is complete and either the certiorari proceedings or the time for seeking a writ of certiorari has expired.)  The instant Petition was timely filed on December 23, 2008. *See* 28 U.S.C. § 2244(d)(1)(A) (creating a one year statute of limitations for habeas cases challenging state court judgments, running from the date on which the judgment became final).

## A.    The Offending Conduct

The underlying crimes that Petitioner was convicted of occurred on April 15, 2004 in Manhattan.[6] At approximately 7:40 a.m., A.O.[7] left her apartment to take the subway to high school.[8] A.O. saw Petitioner, whom she recognized as the man who assisted the superintendent of her building.[9] Petitioner asked A.O. to come inside the building with him and knock on an apartment door.[10] A.O. agreed without asking Petitioner why he needed her help.[11] Petitioner led A.O. to the second floor of the building and pushed her inside his apartment.[12] When A.O. screamed, Petitioner told her to shut up and threatened to kill her.[13] Wielding a screwdriver, Petitioner opened the door to a bedroom in the apartment

---

[6]    *See* Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus ("Opp. Mem.") at 3 (citing 11/9/04 Trial Transcript ("Trial Day 2 Tr.") at 11-12).

[7]    Because of her age and the nature of the offense, the record does not disclose the victim's name.

[8]    *See* Trial Day 2 Tr. at 11-12; 104-105.

[9]    *See id.* at 14.

[10]    *See id.* at 17.

[11]    *See id.*

[12]    *See id.* at 18.

[13]    *See id.* at 19-21, 77.

and ordered A.O. inside.[14]  Petitioner then told her to remove her clothes, and she

complied.[15]  Petitioner forced A.O.'s legs apart, licked her vagina, and eventually

penetrated her vagina with his penis.[16]  Petitioner agreed to let A.O. go after she

assured him she would not call the police.[17]

      A.O. returned to her apartment where she immediately told her

mother's boyfriend that she had been raped by the short man with the beard who

"used to mop the floor" in their building.[18]  A.O.'s mother's boyfriend called the

police.[19]  The police arrived at A.O.'s building and arrested Petitioner.[20]

      Later, the police asked Petitioner to swab his cheek for DNA.[21]  A.O

was taken to Columbia Presbyterian Hospital, where she was examined.[22]  Dr.

Minnie Bhagavan conducted a gynecological exam and used a sexual abuse

---

[14]  *See id.* at 18-23.

[15]  *See id.* at 25, 101.

[16]  *See id.* at 25-28.

[17]  *See id.* at 29.

[18]  *Id.* at 114.

[19]  *See id.* at 113.

[20]  *See id.* at 41, 163-164.

[21]  *See id.* at 258.

[22]  *See id.* at 44.

-4-

evidence collection kit on A.O.[23]  Dr. Bhagavan swabbed A.O.'s vagina and collected her clothing for DNA testing.[24]  The DNA from the semen collected from A.O.'s underwear matched the DNA collected from Petitioner's cheek swab.[25]  At trial, A.O. identified Petitioner as the man who had raped her.[26]

### B.    Procedural History

On November 16, 2004, Petitioner was convicted by a jury of first degree rape, first degree criminal sexual assault, and first degree attempted rape.[27] Petitioner, represented by new counsel, appealed his conviction to the Appellate Division, First Department, raising the following claims: (1) the trial court denied him the right to counsel during a proffer colloquy; (2) the court abused its discretion by ordering court officers to remove him from the courtroom in front of the jury; (3) the court's comments improperly burdened his right to self-representation; and (4) his sentence was excessive.

On June 19, 2007, the Appellate Division unanimously affirmed

---

[23]     *See id.* at 240-241.

[24]     *See id.* at 244.

[25]     *See id.* at 269.

[26]     *See id.* at 13-14.

[27]     *See* Pet. at 2.

-5-

Petitioner's conviction and sentence.[28]  The court found there was no merit to Petitioner's claim that the trial court made remarks that impinged upon, or improperly dissuaded Petitioner from exercising his constitutional right to self-representation.[29]  Next, the court found that Petitioner's claims that the trial court denied him the right to counsel and that the court should have excused the jury before granting his request for self-representation were unpreserved.[30]  The Appellate Division also found no basis for reducing Petitioner's sentence.[31]  On September 24, 2007, the Court of Appeals denied Petitioner's motion for leave to appeal.[32]

## III.  LEGAL STANDARDS

### A.    Deferential Standard for Federal Habeas Review

This Petition is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA").  The AEDPA provides that a federal court may not grant a writ of habeas corpus to a prisoner in custody pursuant to the

---

[28]    *See People v. Jones*, 838 N.Y.S.2d 64 (1st Dep't 2007).

[29]    *See id.* at 64.

[30]    *See id.* at 65.

[31]    *See id.*

[32]    *See People v. Jones*, 9 N.Y.3d 923 (2007).

-6-

judgment of a state court with respect to any claim, unless the state court's adjudication on the merits of that claim: "(1) was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;"[33] or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[34]

A state-court decision is contrary to clearly established federal law, as determined by the Supreme Court, in the following two instances:

> First, a state-court decision is contrary to this Court's precedent if the state court arrives at a conclusion opposite to that reached by this Court on a question of law. Second, a state-court decision is also contrary to this Court's precedent if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours.[35]

With regard to the "unreasonable application" prong, the Supreme Court has stated:

> [A] state-court decision can involve an "unreasonable application" of this Court's clearly established precedent in two ways. First, a state-court decision involves an

---

[33]    28 U.S.C. § 2254(d)(1).

[34]    *Id.* § 2254(d)(2).

[35]    *Williams v. Taylor,* 529 U.S. 362, 405 (2000).

unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case.  Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.[36]

In order for a federal court to find a state court's application of

Supreme Court precedent to be unreasonable, the state court's decision must have

been more than incorrect or erroneous.  Rather, "[t]he state court's application of

clearly established law must be *objectively unreasonable*."[37]  This standard "'falls

somewhere between merely erroneous and unreasonable to all reasonable

jurists.'"[38]  While the test requires "'[s]ome increment of incorrectness beyond

error, . . . the increment need not be great; otherwise habeas relief would be limited

---

[36]    *Id.* at 407.

[37]    *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (emphasis added).  *Accord Renico v. Lett*, 559 U.S. 766, 773 (2010) (stating that "[t]his distinction creates 'a substantially higher threshold' for obtaining relief than *de novo* review") (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)); *Williams*, 529 U.S. at 409; *Harris v. Kuhlman*, 346 F.3d 330, 344 (2d Cir. 2003).

[38]    *Overton v. Newton*, 295 F.3d 270, 276 (2d Cir. 2002) (quoting *Jones v. Stinson*, 229 F.3d 112, 119 (2d Cir. 2000)).

to state court decisions so far off the mark as to suggest judicial incompetence.'"[39] Furthermore, section 2254(d) applies to a defendant's habeas petition even where the state court order does not include an explanation of its reasoning.[40]

> Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief. This is so whether or not the state court reveals which of the elements in a multipart claim it found insufficient, for [section] 2254(d) applies when a 'claim,' not a component of one, has been adjudicated.[41]

Section 2254(d) also applies where a state court does not explicitly state in its opinion that it is adjudicating a claim on the merits.[42] "When a federal claim has been presented to a state court and the state court has denied relief, it may be

---

[39]   *Francis v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000) (quoting *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 889 (3d Cir. 1999)).

[40]   *See Harrington v. Richter*, 131 S. Ct. 770, 784 (2011).

[41]   *Id.* (citing, *inter alia*, *Sellan v. Kuhlman*, 261 F.3d 303, 311-12 (2d Cir. 2001) ("[W]hen a state court fails to articulate the rationale underlying its rejection of a petitioner's claim, and when that rejection is on the merits, the federal court will focus its review on whether the state court's ultimate decision was an 'unreasonable application' of clearly established Supreme Court precedent.")).

[42]   *See Harrington*, 131 S. Ct. at 784.

presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."[43]

The deferential standard of review created by the AEDPA also extends to state-court factual determinations. Such determinations are presumed to be correct, and the petitioner must rebut them by clear and convincing evidence.[44]

### B.    Exhaustion Requirement

Section 2254 provides that a habeas petition by a state prisoner may not be granted unless "the applicant has exhausted the remedies available in the courts of the State."[45]  In order to satisfy this exhaustion requirement, a prisoner must have "'fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts,'"[46] either in the form of "explicit constitutional arguments" or simply by "alleging facts that fall 'well within the mainstream of constitutional litigation.'"[47]  Fair presentation of a claim,

---

[43]    *Id.* at 784-85.

[44]    *See* 28 U.S.C. § 2254(e)(1).

[45]    *Id.* § 2254(b)(1)(A).

[46]    *Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001) (quoting *Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981)).

[47]    *Levine v. Commissioner of Corr. Servs.*, 44 F.3d 121, 124 (2d Cir. 1995) (quoting *Daye v. Attorney Gen.*, 696 F.2d 186, 192 (2d Cir. 1982) (en banc)).

-10-

for exhaustion purposes, includes petitioning for discretionary review in the state's highest appellate court.[48]

When a habeas petition under the AEDPA contains both exhausted and unexhausted claims, a district court "can offer the petitioner 'the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims.'"[49] A district court may also deny a petition on the merits, even if it contains unexhausted claims.[50] The Supreme Court has noted that "plainly meritless" claims should be denied on the merits rather than dismissed for failure to exhaust.[51] Finally, in limited circumstances, a district court may stay a mixed petition and hold it in abeyance until it has been

---

[48]    *See O'Sullivan v. Boerckel*, 526 U.S. 838, 847-48 (1999). *See also Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005) (stating that in New York, exhaustion requires that a "criminal defendant . . . first appeal his or her conviction to the Appellate Division, and then . . . seek further review of that conviction by applying to the Court of Appeals for a certificate granting leave to appeal").

[49]    *McKethan v. Mantello*, 292 F.3d 119, 122 (2d Cir. 2002) (quoting *Rose v. Lundy*, 455 U.S. 509, 510 (1982)).

[50]    *See* 28 U.S.C. § 2254(b)(2).

[51]    *See Rhines v. Weber*, 544 U.S. 269, 277 (2005) (noting that in light of the discretion to deny unexhausted claims on the merits, the decision to stay a habeas petition to allow a petitioner to exhaust plainly meritless claims would be an abuse of discretion).

-11-

properly presented to the state courts.[52]

### C.      Procedural Bar

Under the adequate and independent state ground doctrine, if the last state court to render judgment clearly and expressly states that its judgment rests on a state procedural bar, federal habeas review is precluded.[53]  Even if the state court alternatively rules on the merits of the federal claim, federal habeas review is precluded if an adequate and independent state ground would bar the claim in state court.[54]  Federal habeas review of procedurally barred claims is foreclosed unless the prisoner can demonstrate either: (1) "'cause for the default and actual prejudice;'" or (2) "'that failure to consider the claims will result in a fundamental miscarriage of justice.'"[55]  To show cause for a default, a prisoner must put forth

---

[52]      *See id.* at 277-78.  On December 7, 2009, Magistrate Judge Freeman allowed Petitioner, upon his request, to file a motion for a stay within thirty days, explaining why he believed that his unexhausted claims have merit, and why he failed to exhaust them.  On March 1, 2009, the Court denied Petitioner's request for a stay because he failed to submit a renewed motion.

[53]      *See Jones v. Duncan,* 162 F. Supp. 2d 204, 210 (S.D.N.Y. 2001) (citing *Jones v. Vacco,* 126 F.3d 408, 415 (2d Cir. 1997)).

[54]      *See, e.g., Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989); *Garcia v. Lewis,* 188 F.3d 71, 77-82 (2d Cir. 1999); *Glenn v. Bartlett*, 98 F.3d 721, 724-25 (2d Cir. 1996).

[55]      *Glenn*, 98 F.3d at 724 (quoting *Coleman v. Thompson,* 501 U.S. 722, 750 (1991)).  *Accord Ylst v. Nunnemaker,* 501 U.S. 797, 801 (1991); *Epps v.*

some objective factor, external to the defense, explaining why the claim was not previously raised.[56] The Supreme Court has provided little guidance as to what constitutes "prejudice," but it can be inferred that prejudice is shown when the claim, if proven, would bear on the petitioner's guilt or punishment.[57] The fundamental miscarriage of justice exception to the procedural bar rule is available only upon a showing of actual innocence.[58] Finally, a habeas petitioner may not avoid the exhaustion requirement by waiting until federal habeas review to bring claims properly raised in state court. If such claims would be procedurally barred on the state level, they are deemed exhausted and procedurally defaulted for the purposes of federal habeas review.[59]

### D.   Ineffective Assistance of Counsel Under *Strickland v. Washington*

---

*Commissioner of Corr. Servs.*, 13 F.3d 615, 617-18 (2d Cir. 1994).

[56]    *See Restrepo v. Kelly*, 178 F.3d 634, 638 (2d Cir. 1999).

[57]    *See Banks v. Dretke*, 540 U.S. 668, 671 (2004) (stating that "prejudice within the compass of the 'cause and prejudice' requirement exists when suppressed evidence is 'material' for *Brady* purposes").

[58]    *See Murray v. Carrier*, 477 U.S. 478, 496 (1986) ("[W]e think that in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.").

[59]    *See Coleman*, 501 U.S. at 735 n.1. *See also Woodford v. Ngo*, 548 U.S. 81, 92-93 (2006).

-13-

To succeed on a claim of ineffective assistance of counsel in violation of the Sixth Amendment, a petitioner "must demonstrate (1) that his attorney's performance 'fell below an objective standard of reasonableness,' and (2) that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"[60] "To satisfy the first prong – the performance prong – the record must demonstrate that 'counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'"[61] The inquiry under the performance prong is "contextual" and "asks whether defense counsel's actions were objectively reasonable considering all the circumstances."[62] "In assessing the attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use hindsight to second-guess his strategy choices."[63]

---

[60] *Wilson v. Mazzuca*, 570 F.3d 490, 501 (2d Cir. 2009) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)). *Accord Smith v. Spisak*, 558 U.S. 139, 149 (2010).

[61] *Wilson*, 570 F.3d at 502 (quoting *Strickland*, 466 U.S. at 687).

[62] *Purdy v. United States*, 208 F.3d 41, 44 (2d Cir. 2000) (citing *Strickland*, 466 U.S. at 688).

[63] *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (quoting *Strickland*, 466 U.S. at 690).

In determining what constitutes objective reasonableness, courts look to "'[p]revailing norms of practice as reflected in American Bar Association standards.'"[64]  Attorney errors that fall below an objective standard of reasonableness "include omissions that cannot be explained convincingly as resulting from a sound trial strategy, but instead arose from oversight, carelessness, ineptitude, or laziness."[65]  "'Judicial scrutiny of counsel's performance must be highly deferential,' and 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'"[66]  "'The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'"[67]

To satisfy the second prong – the prejudice prong – a "defendant must show that there is a *reasonable probability* that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."[68]  In

---

[64]  *Purdy*, 208 F.3d at 44 (quoting *Strickland*, 466 U.S. at 688).

[65]  *Wilson*, 570 F.3d at 502 (citation omitted).

[66]  *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009) (quoting *Strickland*, 466 U.S. at 689).

[67]  *Id.* (quoting *Strickland*, 466 U.S. at 688).

[68]  *Strickland*, 466 U.S. at 694 (emphasis added).

-15-

assessing prejudice, courts review the record to determine the impact of the alleged ineffectiveness within the context of the entire trial.[69]   In other words, the "question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt."[70]   Finally, a finding of lack of prejudice may precede, or preempt, the quality of representation inquiry.[71]   Thus, if a court finds no prejudice, it need not engage in the often thorny inquiry of the adequacy of counsel's performance.

## IV.   DISCUSSION

### A.   Petitioner's Exhausted Claims

#### 1.   Self-Representation Claim

Petitioner alleges that the trial court unduly burdened his right to self-representation when it advised him that he had the "right" to "get [him]self convicted and do the max," and that he would be excluded from the courtroom if he

---

[69]   *See Berghuis v. Thompkins*, 130 S. Ct. 2250, 2264 (2010) ("In assessing prejudice, courts 'must consider the totality of the evidence before the judge or jury.'") (quoting *Strickland*, 466 U.S. at 695).

[70]   *Strickland*, 466 U.S. at 694.

[71]   *See id.* at 697.

-16-

did not follow the court's instructions.[72]

Under the Sixth Amendment, a criminal defendant enjoys a constitutional right to self-representation.[73] He may exercise this right only if he has knowingly and intelligently waived his right to counsel.[74] The right to self-representation is unqualified when exercised before the commencement of trial.[75] To exercise the right after trial has started, however, the petitioner must show that "the prejudice to the legitimate interestes of the defendant overbalances the potential disruption of proceedings already in progress."[76] The facts and procedures relevant to Petitioner's decision to represent himself at trial were as follows. At Petitioner's pre-trial hearing, he asked the court to dismiss his counsel, but withdrew his request minutes later.[77] Five days later, after the trial had begun,

---

[72]   *See* Memorandum of Law in Support of Habeas Petition ("Pet. Mem.") at 1 (quoting Trial Day 2 Tr. at 52).

[73]   *See Faretta v. California*, 422 U.S. 806, 819 (1975).

[74]   *See id.* at 835 (quoting *Johnson v. Zerbst*, 304 U.S. 456, 464-65 (1938)).

[75]   *See id.* at 842 (quoting *United States ex rel. Maldonado v. Denno*, 348 F.2d 12, 15 (2d Cir. 1965).

[76]   *Sapienza v. Vincent*, 534 F.2d 1007, 1010 (2d Cir. 1976).

[77]   *See* 11/4/04 Payton Hearing Transcript ("Hearing Tr.") at 33-34, 39.

-17-

Petitioner again requested that his counsel be dismissed.[78] The trial judge asked Petitioner a series of questions to determine whether Petitioner's decision to represent himself was knowing, voluntary, and entirely unequivocal.[79] Thereafter, the following colloquy between Petitioner and the trial judge ensued:

> THE COURT: Have you had sufficient time to reflect on your decision to represent yourself?
>
> THE DEFENDANT: No.
>
> THE COURT: You haven't had sufficient time?
>
> THE DEFENDANT: No.[80]

The court resumed the trial and advised Petitioner to renew his request once he had sufficient time to consider the matter.[81] Petitioner declined to do so.

Given this record, Petitioner suffered no prejudice based on the court's decision to proceed with trial. The trial judge was aware of Petitioner's relationship with his counsel and reasonably concluded that counsel's representation was adequate and that Petitioner's self-representation would disrupt the trial.

---

[78] *See id.* at 52.

[79] *See id.* at 53-54.

[80] *Id.* at 55.

[81] *See id.* at 55-56.

-18-

For Petitioner to prevail on his self-representation claim, the evidence would have to support a conclusion that the Appellate Division's denial of the claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[82]  The Appellate Division's decision was reasonable, however, since the pretrial and trial record outlined above demonstrates that Petitioner never "clearly and unequivocally" requested to represent himself.[83]  Thus, Petitioner's self-representation claim is denied.

### 2.    Right to Counsel Claim

The gravaman of this claim is that Petitioner's right to counsel was violated when he disagreed with his counsel about which witnesses to call at  trial.[84]  Counsel advised the court that he intended to call only Petitioner, but Petitioner stated that he wanted to call a number of witnesses.[85]  Petitioner and his counsel proffered information about the expected testimony of the potential

---

[82]    28 U.S.C. § 2254(d)(1)

[83]    *Faretta*, 422 U.S. at 835.

[84]    *See* Pet. Mem. at 2.

[85]    *See* Trial Day 2 Tr. at 205.

-19-

witnesses, but the court precluded the testimony of all but one.[86]  Petitioner claims that this proceeding somehow violated his right to counsel.[87]

The Appellate Division held that this claim was unpreserved.[88]  New York's contemporaneous objection rule mandates that a challenge to a criminal court's ruling or instruction must be raised through a specific and timely objection in order to be preserved for appeal.[89]  Petitioner violated this rule by waiting until his trial was over to raise his objection to his counsel's proffer of witness testimony. Accordingly, the Appellate Division's decision rests on an independent and adequate state procedural rule barring federal habeas review.[90]

Petitioner does not allege that there is cause for his default, nor has he made a factual showing that he is actually innocent.[91]  Because Petitioner cannot satisfy either the cause and prejudice or actual innocence standard, the procedural bar is unexcused.  Consequently, there is no need to address whether Petitioner's

---

[86]     *See id.* at 206-221.

[87]     *See* Pet. Mem. at 2.

[88]     *See Jones*, 838 N.Y.S.2d at 65.

[89]     *See* New York Criminal Procedure Law ("CPL") § 470.05(2).

[90]     *See Whitley v. Ercole*, 642 F.3d 278, 286–87 (2d Cir. 2011); *Fama v. Commissioner of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000).

[91]     *See Schlup v. Delo*, 513 U.S. 298, 324 (1995).

claim raises a valid question of federal constitutional rights, nor is there any need to engage in harmless error analysis, although either inquiry would likely supply an independent basis for denying relief. The claim is denied.

### 3.     Failure to Excuse the Jury Claim

Petitioner alleges that the trial court's failure to excuse the jury before he was escorted from the courtroom violated his constitutional right to be present at all material stages of his trial.[92]  Petitioner did not object at the time he was removed.  On the second day of the trial, after several warnings regarding Petitioner's disruptive behavior, the trial judge asked Petitioner if he wanted to leave.[93]  Petitioner chose to leave, but decided to return about five minutes later.[94]  During the jury charge, the court instructed the jury that: "You are to disregard any statements made by the Defendant other than those given by him under oath on the witness stand.  In other words, decide the case solely on the evidence."[95]

Petitioner did not preserve this claim was unpreserved because it

The Appellate Division held that this claim was unpreserved because it

---

[92]     *See* Pet. Mem. at 3.

[93]     *See* Trial Day 2 Tr. at 180-181.

[94]     *See id.* at 181, 184.

[95]     *See id.* at 443.

-21-

also violated New York's contemporaneous objection rule.[96] Again, the Appellate Division's decision rests on an independent and adequate state ground barring federal habeas review.[97]

Petitioner does not allege that there is cause for his default, nor has he made a factual showing that he is actually innocent.[98] Thus, the procedural bar is unexcused, and the claim is denied.

### B.    Petitioner's Unexhausted Claims

#### 1.    The Excessive Sentence Claim

Petitioner raises a *constitutional* objection to his sentence for the first time in his federal habeas petition.[99] His claim is unexhausted because the constitutional dimension of the excessive sentence claim was not "fairly presented" to the state courts on direct appeal.[100] However, it is also meritless.[101] "[I]t is well

---

[96]    *See Jones*, 838 N.Y.S.2d at 64.

[97]    *See Whitley*, 642 F.3d at 286-87; *Fama*, 235 F.3d at 810-11.

[98]    *See Schlup*, 513 U.S. at 324.

[99]    Petitioner's sentencing claim on direct appeal was based on state law. *See* Petitioner's Appellate Brief ("Pet. App. Brief"), Ex. A to Opp. Mem., at 52-54.

[100]    *See Fama*, 235 F.3d at 808 (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)).

[101]    *See Dunham v. Travis*, 313 F.3d 724, 729-30 (2d Cir. 2002) (discussing *Lambrix v. Singletary*, 520 U.S. 518, 523 (1997)) (stating that "hurdling" the

-22-

settled that '[n]o federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law.'"[102] The court sentenced Petitioner, as a second time offender to concurrent determinate prison terms of twenty-two years on the rape and sexual assault counts and fifteen years on the attempted rape count. Petitioner's sentence is well within the range prescribed by state law.[103] Therefore, Petitioner's excessive sentence claim is not cognizable on habeas review.

### 2.      Ineffective Assistance of Trial Counsel Claim

Petitioner next claims he received ineffective assistance of trial counsel.[104] Petitioner alleges trial counsel: (1) refused to adequately question witnesses on cross-examination; (2) failed to present certain defense witnesses; (3) failed to raise obvious and significant issues; (4) refused to make a pre-trial motion based on illegally obtained evidence; (5) failed to present exculpatory evidence; (6)

---

procedural bar is justified when the merits of a habeas claim are easily resolvable against the habeas petitioner). *Accord* 28 U.S.C. § 2254(b)(2) (authorizing judges to deny mixed petitions on the merits).

[102]      *Ross v. Gavin*, Civ. No. 95-2448, 1996 WL 346669, at *1 (2d Cir. June 25, 1996) (quoting *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992)).

[103]      *See* NYPL § 70.00(2)(b) (setting the maximum term for a Class B felony, such as first degree rape or first degree criminal sexual act, at twenty-five years); *Id.* § 70.00(2)(c) (setting the maximum term for a Class C felony, such as attempted rape, at fifteen years).

[104]      *See* Pet. Mem. at 5.

-23-

failed to consult with Petitioner before trial and during jury selection; and (7) erroneously advised Petitioner on points of law.[105]  Petitioner did not raise any of these allegations on direct appeal.

Under New York law, attacks on a conviction that are based on errors found in the record must be raised on direct appeal, rather than through collateral proceedings.[106]  Petitioner's first four allegations should have been raised on direct appeal because they are record-based.  *First*, trial counsel throughly cross-examined all of the Government's witnesses.  For example, on cross-examination of A.O.'s mother's boyfriend, counsel intimated that A.O. "didn't sound truthful" to him because he had to ask her repeatedly what had happened.[107]  *Second*, Petitioner's differences with counsel over which defense witnesses to call is developed in the record.[108]  *Third*, Petitioner's claim about counsel's failure to raise

---

[105]    *See id.*

[106]    *See Dunham*, 313 F.3d at 729 ("In New York, a criminal defendant may not raise in a § 440 motion a claim that could have been raised on direct appeal."); CPL § 440.10(2)(C) (requiring courts to deny a motion to vacate the judgment where "sufficient facts appear on the record" for the claim to have been raised and decided on direct appeal).

[107]    Trial Day 2 Tr. at 111-112.

[108]    *See id.* at 205.

obvious and significant issues, while vague, is clearly based on the record.[109]

*Fourth*, the record recounts Petitioner's *Payton* hearing, in which counsel cross-examined two officers about Petitioner's arrest and alleged consent to the search of his apartment.[110]  Counsel made appropriate arguments about the suppression of the photographs that the police seized from Petitioner's apartment.[111]  *Fifth*, Petitioner's allegation about exculpatory evidence is vague, but, nonetheless, reviewable based on the record.  If Petitioner is referring to DNA evidence, his bed sheets were neither admitted into evidence, nor tested for DNA.[112]  The DNA analysis from Petitioner's cheek swabs was admitted into evidence without objection.[113]  If Petitioner is referring to police photographs of his apartment, trial counsel argued, unsuccessfully, for their suppression.[114]  These and all other evidentiary issues that

---

[109]   *See, e.g.*, *Sweet v. Bennett*, 353 F.3d 135, 139 ( 2d Cir. 2003) (holding that trial counsel's failure to object to jury charge was not proper basis for a section 440 motion to vacate judgment); *McLeod v. Bellnier*, No. 09 Civ. 3493, 2010 WL 2540411, at *3 n.2 (E.D.N.Y. June 16, 2010) (finding trial counsel's failure to make objections, request a jury charge, and move for a mistrial to be record-based).

[110]   *See* Hearing Tr. at 51-52.

[111]   *See id.*

[112]   *See* Trial Day 2 Tr. at 311.

[113]   *See id.* at 481.

[114]   *See* Hearing Tr. at 54.

arose at trial are documented in the record.

Petitioner brought his one appeal as of right, and his petition for discretionary review by the New York Court of Appeals was denied.[115] New York does not permit collateral attack on a criminal conviction which the defendant unjustifiably failed to challenge on direct appeal. Petitioner's record-based *Strickland* allegations are therefore subject to an adequate and independent state procedural bar, and, as a consequence, exhausted and procedurally defaulted for the purposes of federal habeas review.

The holding of *Massaro v. United States* is not to the contrary.[116] In *Massaro*, the Supreme Court held that, for a habeas petition under section 2255, a petitioner's failure to raise an ineffective assistance of counsel claim on direct appeal does not give rise to a procedural default.[117] The Second Circuit has recognized that *Massaro*'s holding was limited to section 2255 proceedings.[118] Comity, federalism, and section 2254's exhaustion requirement command that a

---

[115]    *See* New York Court Rules § 500.20(a)(2), CPL § 450.10(1). *See also People v. Terry*, 845 N.Y.S.2d 145, 145 (3d Dep't 2007).

[116]    *Massaro v. United States*, 538 U.S. 500 (2003).

[117]    *See id.* at 508.

[118]    *See Sweet*, 353 F.3d at 140.

petitioner in a 2254 proceeding may not wait until his day in federal court to claim ineffective assistance of counsel for the first time.[119]

The remaining question is whether Petitioner can meet either the cause and prejudice or the actual innocence standard with respect to these allegations. Once more, Petitioner has not explained the cause for his default. No objective, external factor prevented him from raising these allegations on direct appeal. Petitioner was represented by counsel during his direct appeal, which negates the likelihood that ineffective appellate counsel caused the default of petitioner's ineffective trial counsel claim. Appellate counsel's inadvertence in failing to raise an ineffective assistance of trial counsel claim does not constitute cause,[120] and Petitioner offers no evidence of prejudice. Because Petitioner has offered no evidence of actual innocence, he is not entitled to the fundamental miscarriage of

---

[119]   *See Murray,* 477 U.S. at 486 ("The principle of comity that underlies the exhaustion doctrine would be ill served by a rule that allowed a federal district court 'to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation,' and that holds true whether an ineffective assistance claim is asserted as cause for a procedural default or denominated as an independent ground for habeas relief.") (quoting *Darr v. Burford,* 339 U.S. 200, 204 (1950)).

[120]   *See id.* at 488 (stating that "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default").

-27-

justice exception. Petitioner's procedural default on these allegations is, therefore, not excused.

Petitioner's remaining allegations regarding trial counsel's performance are that (1) counsel failed to consult with him before trial and during jury selection, and (2) counsel erroneously advised him on points of law.[121] These allegations are based on facts outside the record. The Second Circuit has held that some non-record-based ineffective assistance claims are best reserved for collateral review.[122] However, these allegations are meritless. *First*, Petitioner's contention that counsel did not consult with him before trial is belied by the record. Counsel met with Petitioner before trial, including for about "five hours" before jury selection.[123] The record does not reflect whether counsel consulted with him during jury selection, but Petitioner does not allege how this would have impacted the outcome of the trial. As a result, he cannot prove prejudice under *Strickland*.

---

[121]   *See* Pet. Mem. at 5.

[122]   *See Wiggins v. Greiner*, 132 Fed. App'x 861, 866 (2d Cir. 2005) (finding that off-the-record interactions between petitioner and his attorney should be brought in a section 440 motion); *Sweet*, 353 F.3d at 139 (noting that "New York courts have held that some ineffective assistance claims are 'not demonstrable on the main record' and are more appropriate for collateral or post-conviction attack, which can develop the necessary evidentiary record" (quoting *People v. Harris*, 491 N.Y.S.2d 678, 687 (1985) (collecting cases))).

[123]   11/8/04 Trial Transcript ("Trial Day 1 Tr.") at 18.

-28-

*Second*, Petitioner's claim that counsel erroneously advised him on points of law is viewed "with some suspicion" particularly in the absence of "objective evidence of corroboratory circumstances[.]"[124] A defendant is required to state his claim with "greater particularity" and "some substantiation."[125] Petitioner's allegation fails because he does not set forth any facts, description, or citation to the record from which to argue that he was prejudiced under *Strickland*. His claim is denied.

### 3.   Ineffective Assistance of Appellate Counsel Claim

Next, Petitioner claims that he received ineffective assistance of appellate counsel because his appellate counsel refused to argue "significant and obvious issues" which could have resulted in reversal.[126] Under New York law, this claim is unexhausted because Petitioner failed to file a motion for a writ of error coram nobis.[127] In any event, this claim is meritless. The Supreme Court has held that appellate counsel "need not advance *every* argument, regardless of merit,

---

[124]   *United States v. Wisniewski*, 478 F.2d 274, 284 (2d Cir. 1973).

[125]   *Chang v. United States*, 250 F.3d 79, 85 (2d Cir. 2001).

[126]   Pet. Mem. at 18.

[127]   *See Sweet*, 353 F.3d at 141 n.7 ("In New York, coram nobis is the appropriate remedy for ineffective assistance of appellate counsel.").

-29-

urged by the appellant."[128] "The benchmark of effective appellate advocacy is counsel's decision to pursue only those arguments which are most promising upon appellate review."[129] Here, appellate counsel raised four arguments on appeal: (1) the court denied Petitioner the right to counsel during a proffer colloquy; (2) the court abused its discretion by ordering the court officers to remove Petitioner from court in front of the jury; (3) the court's comments improperly burdened Petitioner's right to self-representation, and (4) the sentence was excessive.[130] Appellate counsel's performance was not deficient under *Strickland.* The claim is denied.

### 4.    Legal Sufficiency and Weight of the Evidence Claim

Petitioner next claims that the evidence was insufficient to establish his guilt, and that the jury's verdict was against the weight of the evidence.[131] The claim is unexhausted because it was not raised on direct appeal. But no state remedy remains, so the claim is deemed exhausted and procedurally barred.

---

[128]    *Evitts v. Lucey,* 469 U.S. 387, 394 (1985) (emphasis in original) (citing *Jones v. Barnes,* 463 U.S. 745, 751-54 (1983)).

[129]    *See Jones v. Poole,* No. 06 Civ. 7172, 2007 WL 2456646, at *8 (S.D.N.Y. Aug. 21, 2007) (citing *Barnes,* 463 U.S. at 751-53).

[130]    *See generally* Pet. App. Brief.

[131]    *See* Pet. Mem. at 7; CPL § 440.10(2)(c).

-30-

Even if it were not barred, a weight of evidence claim is grounded in state law and is, therefore, not cognizable on federal habeas review.[132] However, a sufficiency of the evidence claim is different: "[T]he 'weight of the evidence' argument is a pure state law claim grounded in New York Criminal Procedure Law § 470.15(5), whereas a legal sufficiency claim is based on federal due process principles."[133] Petitioner cites the Fourteenth Amendment in support of his legal sufficiency argument.[134]

As to legal sufficiency, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[135] Here, the prosecution presented A.O.'s testimony that Petitioner displayed a screwdriver, threatened to kill her, and directed that she

---

[132]   *See* 28 U.S.C. § 2254(a) (permitting federal habeas review only where a petitioner has alleged a violation of the Constitution or federal law); *McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 Fed. App'x 69, 75 (2d Cir. 2011).

[133]   *Garbez v. Greiner*, No. 01 Civ. 9865, 2002 WL 1760960 at *8 (S.D.N.Y. July 30, 2002) (citing *People v. Bleakley*, 69 N.Y.2d 490, 495 (1987)).

[134]   *See* Pet. Mem. at 7.

[135]   *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

-31-

remove her clothes.[136]  Petitioner attempted to penetrate A.O. and eventually

succeeded.[137]  A.O.'s testimony is reinforced by her outcry minutes after the

attack, and by the fact that the DNA from semen in her underwear matched the

DNA collected from Petitioner's cheek swab.[138]  In sum, the prosecution presented

sufficient evidence for a rational trier of fact to find him guilty on all counts.[139]

    Consequently, Petitioner cannot satisfy either the cause and prejudice

or actual innocence standard.  As such, his claim is denied.

### 5.    Fourth Amendment Claim

    Petitioner's Fourth Amendment claim—that the police conducted a

warrantless and nonconsensual search of his apartment—is precluded from federal

habeas review by the Supreme Court's holding in *Stone v. Powell*.[140]  As

explained by the Second Circuit, review of Fourth Amendment claims in habeas

---

[136]    *See* Trial Day 2 Tr. at 25-28.

[137]    *See id.*

[138]    *See id.* at 34, 308.

[139]    *See Jackson*, 443 U.S. at 318-19.

[140]    *See* 428 U.S. 465, 481 (1976) (holding that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial").

-32-

petitions is appropriate in only two instances: "(a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process."[141]

It is well-established that New York has adequate corrective procedures for litigating Fourth Amendment claims.[142] Therefore, federal courts "have no authority to review the state record and grant the writ simply because [they] disagree with the result reached by the state courts."[143] Here, Petitioner was given a full and fair opportunity to litigate his Fourth Amendment claim in a *Payton* hearing. At the hearing, the court evaluated the circumstances of Petitioner's arrest and his consent to search of his apartment.[144] Thus, this claim

---

[141]    *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992).

[142]    *See id.* at 70 n.1 (stating that "federal courts have approved New York's procedure for litigating Fourth Amendment claims, embodied in N.Y. Crim. Proc. Law § 710.10 et seq., . . . as being facially adequate") (quotation marks and citation omitted).

[143]    *Gates v. Henderson*, 568 F.2d 830, 840 (2d Cir. 1977). *Accord Cappellan*, 975 F.2d at 72 ("[A] mere disagreement with the outcome of a state court ruling is not the equivalent of an unconscionable breakdown in the state's corrective process.").

[144]    *See* Hearing Tr. at 9-54.

-33-

is foreclosed from habeas review by this Court.

### 6.   Prosecutorial Misconduct Claim

Petitioner next claims that the prosecutor's alleged misconduct entitles him to habeas relief.[145]  Specifically, he alleges: (1) the prosecutor's opinion statement and summation were inflammatory and misleading; (2) the prosecutor presented ambiguous DNA evidence; (3) the prosecutor deliberately disobeyed the court's ruling regarding the presentation of evidence; (4) the prosecutor asked leading questions to the grand jury and at trial; and (5) the prosecutor did not disclose *Brady* and *Rosario* material in a timely fashion.[146]

Because Petitioner did not raise this claim on direct review,  it is unexhausted.  Here, Petitioner cannot return to state court because he has already taken the one direct appeal and one application for leave to appeal to the New York Court of appeals to which he is entitled.[147]  Nor can he raise his claim in a collateral review by way of motion to vacate.[148]  No state remedies exist and

---

[145]     *See* Pet. Mem. at 10.

[146]     *See id.*

[147]     *See Grey v. Hoke*, 933 F.2d 117, 120–21 (2d Cir. 1991); N.Y. Court R. 600.8, 500.20.

[148]     *See* CPL § 440.10(2)(c) (court must deny motion to vacate where record-based claim could have been raised on direct appeal but unjustifiably was

-34-

Petitioner makes no showing of cause or prejudice nor presents evidence of actual innocence to overcome the procedural bar.  Thus, this claim is deemed exhausted but barred from federal habeas review.

### 7.    Judicial Misconduct Claim

Finally, Petitioner alleges that the trial court abused its discretion in numerous ways, including burdening Petitioner's freedom of speech, delivering a misleading jury charge, and denying Petitioner a speedy trial.[149]  Although Petitioner never presented any of these allegations to the state courts, they are all record-based, and, therefore, exhausted and procedurally barred.[150]  Petitioner has not alleged cause and prejudice nor demonstrated actual innocence.  Accordingly, Petitioner's claim is denied.

## V.    CONCLUSION

For the foregoing reasons, the Petition is denied.  The remaining issue is whether to grant a certificate of appealability ("COA").  For a COA to issue, a petitioner must make a "substantial showing of the denial of a

---

not).

[149]    *See* Pet. Mem. at 14-16.

[150]    *See Grey*, 933 F.2d at 120.

-35-

constitutional right."[151]  A "substantial showing" does not require a petitioner to show that he would prevail on the merits, but merely that reasonable jurists could disagree as to whether "the petition should have been resolved in a different manner or [whether] the issues presented were 'adequate to deserve encouragement to proceed further.'"[152]  Petitioner has made no showing.  Thus, I decline to grant a COA.  The Clerk of the Court is directed to close this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            September 26, 2013

---

[151]    28 U.S.C. § 2253(c)(2).

[152]    *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (quotation marks and citation omitted)).  *Accord Middleton v. Attorneys Gen. of the States of New York and Pennsylvania*, 396 F.3d 207, 209 (2d Cir. 2005) (denying COA where reasonable jurists could not debate whether the district court's dismissal of the petition was correct).

<u>-Appearances-</u>

**Petitioner (Pro Se):**

Eric Jones
DIN# 05-A-0420
Elmira Correctional Facility
P.O. Box 500
Elmira, New York 14902-0500

**For Respondent:**

Alyson J. Gill
Thomas B. Litsky
Assistant Attorneys General
120 Broadway, 22nd Floor
New York, New York 10271
(212) 416-6173